UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MELISSA HALL,

                Plaintiff,

      v.

CULTURAL CARE USA, et al.,

                Defendants.

Case No.  3:21-cv-00926-WHO

**ORDER ON MOTION FOR RECONSIDERATION**

Re: Dkt. No. 91

I previously granted summary judgment to the plaintiffs in these consolidated cases on whether they were misclassified as independent contractors by defendant Cultural Care, Inc. *See* Order on Motions for Summary Judgment ("Prior Order") [Dkt. No. 88]. Cultural Care moved for leave to file a motion to reconsider, *see* Motion for Leave to File a Motion for Reconsideration ("Mot.") [Dkt. No. 91], which I granted, treated as a motion for reconsideration, and requested responsive briefing to, *see* Dkt. No. 92. This Order assumes familiarity with the Prior Order. I now clarify the scope of the Prior Order and modify my summary judgment rulings in light of the issues Cultural Care raises.

## DISCUSSION

District courts have inherent authority to modify interlocutory orders prior to final judgment. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001). Reconsideration is generally reserved for extraordinary situations, but it is discretionary; the modifications I make here are appropriate because they will bring the prior decision in line with controlling law. *Cf. Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (permitting reconsideration to correct legal errors).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    Clarification of Prior Order

I first clarify that the Prior Order's constitutional holding was limited to Wage Order claims.

The parties' threshold dispute at summary judgment was over which test for employment applied—the ABC test or the *Borello* test. *See* Prior Order 4–10. The plaintiffs argued that the ABC test applied; Cultural Care argued that the *Borello* test applied because the Legislature carved out an explicit exception from ABC for the class of employees—local childcare coordinators ("LCCs") for the State Department's au pair visa program—to which the plaintiffs belonged. *Id.* 4–6. As relevant here, that statute contained a retroactivity provision. I held that the retroactivity provision violated the California Constitution to the extent it "would retroactively take away wages that individuals earned under the then-operative law." *Id.* 7. In this motion, Cultural Care argues that this holding should not apply to claims (and affirmative defenses against those claims) based on the California Labor Code instead of California's Wage Orders. *See* Mot. 2–7.

Cultural Care is correct that the Prior Order's constitutional holding applied only to a situation in which the ABC test applied at the time the plaintiffs earned wages and to which the California Legislature attempted to retroactively apply the *Borello* test. *See* Prior Order 6–10. Before the Legislature's enactment of statutory provisions dealing with the issue, there was a neat division: the ABC test applied to Wage Order claims (including retroactively from the California Supreme Court's *Dynamex* decision on that test) and the *Borello* test applied to non-Wage Order Labor Code claims. *See id.*; *see also Hill v. Walmart Inc.*, 32 F.4th 811, 819 (9th Cir. 2022) (holding that *Dynamex* did not alter using the *Borello* test for non-Wage Order Labor Code claims); *Garcia v. Border Transportation Grp., LLC*, 28 Cal. App. 5th 558, 571 (2018), *as modified on denial of reh'g* (Nov. 13, 2018) (same). In several bills, the Legislature made some alterations to that state of affairs, selecting by statute which types of claims would get which test. *See* A.B. 2257, Ch. 38, 2020–2021 Reg. Sess. (Cal. 2020); A.B. 5, Ch. 296, 2019–2020 Reg. Sess. (Cal 2019). The Legislature decided to apply the ABC test to a category of Labor Code claims to bring more uniformity to related claims. And, as the Prior Order discussed, the Legislature also

1   statutorily exempted some classes of workers from the ABC test even for their Wage Order

2   claims. *See* Prior Order 6–10.

3       Accordingly, all that the Prior Order held was that it was unconstitutional to retroactively

4   diminish wages the plaintiffs had previously earned under the law as it existed at the time (by

5   applying *Borello* instead of ABC if they led to different results). To the extent Cultural Care

6   argues that reconsideration is warranted, it is more in the nature of a clarification or modification:

7   it argues that Labor Code claims (and affirmative defenses to them) should not have the ABC test

8   applied. I agree; the Prior Order did not hold otherwise. The Prior Order is clarified to this extent.

9   **II.      Modifications of the Prior Order**

10       Cultural Care moves to reconsider the Prior Order to the extent that it granted summary

11   judgment on non-Wage Order claims. The result of the preceding discussion is that the Prior

12   Order is modified by this Order to deny summary judgment to the plaintiffs to the extent that

13   claims arise from the Labor Code and are governed by the *Borello* test. This is because the Prior

14   Order granted them summary judgment on misclassification only if the ABC test applied, but the

15   parties did not go claim-by-claim on that dispute, so I did not either. There are three aspects to

16   this issue that require particular discussion.

17       **A. Disputed Claim and Affirmative Defenses**

18      *First*, Cultural Care's Motion seeks reconsideration of summary judgment to the plaintiffs

19   on their claim for inaccurate wage statements (and any affirmative defenses to non-Wage Order

20   Labor Code claims). *See* Mot. 3. The plaintiffs respond that this claim is in fact a Wage Order

21   claim, so application of the ABC test is still appropriate. *See* Response to the Mot. ("Oppo.")

22   [Dkt. No. 95] 2.

23       I agree with the plaintiffs that this inaccurate wage statement claim is subject to the ABC

24   test for periods when the Legislature did not specifically provide otherwise prospectively. That is,

25   I reject Cultural Care's argument that this is a non-Wage Order claim. The Ninth Circuit and

26   California Court of Appeal have explained that *Dynamex*'s holding applies both to obligations

27   "rooted in" Wage Orders and to claims "equivalent or overlapping non-wage order allegations

28   arising under the Labor Code." *Gonzales v. San Gabriel Transit, Inc.*, 40 Cal. App. 5th 1131,

United States District Court
Northern District of California

1160 (2019); *see Bowerman v. Field Asset Servs., Inc.*, 39 F.4th 652, 665 (9th Cir. 2022). Here, the plaintiffs' inaccurate wage statement claim does come from a Labor Code provision (Section 226), but it also comes from a Wage Order Provision—Section 7 of Wage Order 4. *See* Amended Complaint [Dkt. No. 42] ¶ 89 (relying on Wage Order 4 § 7). So the claim is best conceptualized as being "rooted in" a Wage Order or is, at the very least, overlapping with the obligations it imposes. Consequently, the ABC test applies. *Bowerman*, 39 F.4th at 665.

Whether a particular claim is based on Wage Orders or not should have been raised earlier in the suit. Regardless, this claim is the only one that Cultural Care raises in its motion as being subject to a different analysis than the Prior Order would have imposed. *See* Mot. 6. Cultural Care also references that some affirmative defenses would be subject to *Borello*. *Id.* Because affirmative defenses respond to claims, whether the ABC test or *Borello* test governs depends on the character of the claim, as explained above.

### B.  Timing of Claims

*Second*, Cultural Care's Motion points out in a footnote that one of the plaintiffs' (Ludwig) employment lasted for two months *after* A.B. 2257 became effective. Mot. 3 n.2. The Prior Order held only that *retroactive* application of the LCC exception to wages already earned is unconstitutional to the extent it deprives a plaintiff of wages. The plaintiffs did not raise, and the Prior Order did not address, any constitutional argument about normal, prospective application of the exception. Accordingly, the Prior Order is modified to make clear that the *Borello* test applies to the plaintiffs after the date of the statutory exception coming into effect.

### C.  Summary Judgment Under *Borello*

*Third*, the natural consequence of these findings is that I must decide the parties' cross-motions for summary judgment under the *Borello* test (there was previously no need because I sided with the plaintiffs that the ABC test applied). As I previously indicated, "[i]f the *Borello* test applied, I would deny both parties' motions for summary judgment. The dueling evidence of control or lack thereof introduced by the parties requires contextual determinations by a jury." Prior Order 15 n.7. Because the question is now dispositive, I explain why in a little more detail.

The *Borello* test has two parts: it instructs that a factfinder or court first look to the

4

1    "primary factor" of whether the putative employer "has the right to control the manner and means"

2    of accomplishing the work.  *S. G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 48 Cal. 3d 341,

3    350 (1989).  Then, factfinders or courts must look to various "secondary indicia" of employment

4    status:

> (a) whether the one performing services is engaged in a distinct
> occupation or business; (b) the kind of occupation, with reference to
> whether, in the locality, the work is usually done under the direction
> of the principal or by a specialist without supervision; (c) the skill
> required in the particular occupation; (d) whether the principal or the
> worker supplies the instrumentalities, tools, and the place of work for
> the person doing the work; (e) the length of time for which the
> services are to be performed; (f) the method of payment, whether by
> the time or by the job; (g) whether or not the work is a part of the
> regular business of the principal; and (h) whether or not the parties
> believe they are creating the relationship of employer-employee.

11   *Id.* at 351.  "The individual factors cannot be applied mechanically as separate tests; they are

12   intertwined and their weight depends often on particular combinations."  *Arzate v. Bridge*

13   *Terminal Transp., Inc.*, 192 Cal. App. 4th 419, 426 (2011) (internal quotation marks and citations

14   omitted).

15       Here, neither party is entitled to summary judgment under *Borello*.  As the explanation of

16   the test makes clear, it is highly contextual; it usually requires careful weighing of facts rather than

17   a court at summary judgment.  *Jackson v. AEG Live, LLC*, 233 Cal. App. 4th 1156, 1179 (2015).

18   Both parties have presented sufficient evidence of their position to put the issue to a jury.

19       For its part, Cultural Care is not entitled to summary judgment because the plaintiffs have

20   presented some evidence of control and evidence to support secondary indicia findings, and

21   because one of its core legal arguments is overbroad.  I already explained this last point in the

22   Prior Order; I incorporate here the explanation for why much of Cultural Care's argument about

23   control is premised on a misunderstanding of legal principles.  *See* Prior Order 13–14.  That alone

24   dispenses with some of Cultural Care's affirmative evidence and much of its counterargument to

25   the plaintiffs.  And the evidence the plaintiffs point to further precludes summary judgment.

26   There is evidence on the record that Cultural Care exerts control over various aspects of the

27   plaintiffs' employment, including how much to pay the plaintiffs, Dkt. No. 67-2 at 41:15–18

28   (30(b)(6) deposition), when to pay the plaintiffs, *id.* at 41:23–42:5, assignment of LCCs to host

United States District Court
Northern District of California

5

families, *id.* at 53:24–54:14, and many other things, *see* Dkt. No. 67 at 11–15 (collecting examples with citations).  There is also evidence to support a finding for the plaintiffs on the secondary indicia.  I described in the Prior Order as part of the ABC analysis, and incorporate here, that there is no evidence the plaintiffs were "engaged in a distinct occupation or business" and overwhelming evidence that what the plaintiffs do is "part of the regular business of the principal." *Borello*, 48 Cal. 3d at 350; *see also* Prior Order 11–12.  And there is evidence relevant to some of the other secondary indicia in the plaintiffs' favor, like that Cultural Care pays the plaintiffs.  Dkt. No. 67-2 at 41:15–18.

But there is also sufficient evidence to preclude summary judgment in the plaintiffs' favor under *Borello*.  Most important is the issue of control.  Cultural Care has put forward evidence that the plaintiffs controlled how many hours they worked, how much time off they took, and scheduled their own hours.  *See, e.g.*, Dkt. No. 59-1 at 42:3–10 (deposition of plaintiff Hall).  While I rejected its governmental regulation argument as overbroad, there *are* legitimate examples of when its control does not count toward the *Borello* analysis because it is merely a conduit for State Department regulation.  *See Linton v. Desoto Cab Co., Inc.*, 15 Cal. App. 5th 1208, 1223 (2017); *see, e.g.*, Dkt. No. 67-2 at 53–54 (30(b)(6) witness discussing imposing State Department requirements for physical location of host family).  There is also evidence from which a reasonable jury could find that the plaintiffs controlled much of the manner in which they did the work, except for the most basic requirements like having meetings with host families.  *See, e.g.*, Dkt. No. 59-1 at 30:20–22 (deposition of plaintiff Hall).  There is evidence relevant to the secondary indicia too.  For instance, a jury could find that the parties believed they were not creating an employer-employee relationship because the plaintiffs filed taxes as independent contractors.  *See* Dkt. No. 57 at 35 (collecting citations of tax filings).

In short, this is not one of the relatively rare situations in which a party is entitled to judgment as a matter of law of classification status under *Borello*.  Both parties' motions for summary judgment under *Borello* would have been denied if the Prior Order had addressed this, and today they are.

**III.     Summary**

The net result of the Prior Order and this Order is relatively straightforward.  For wages earned prior to the enactment of the statutory exception, the ABC test governs the plaintiffs' classification status for Wage Order claims and the *Borello* test governs their status for non-Wage Order Labor Code claims.  For wages earned after the statutory exception came into effect, the statute governs, which means the *Borello* test governs their claims.  To the extent their claims are governed by the ABC test, the previous grant of summary judgment to the plaintiffs on the issue of misclassification is unaltered.  To the extent the claims are governed by the *Borello* test, summary judgment on misclassification is denied to both parties.  Affirmative defenses follow the same pattern.  And the claim that the parties fight over here—the claim for inaccurate wage statements—is a Wage Order claim.

**CONCLUSION**

The Prior Order is CLARIFIED and MODIFIED as stated above.

**IT IS SO ORDERED.**

Dated: August 31, 2022



William H. Orrick
United States District Judge